UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

---

JOHN MICHAEL CADARETTE,

        Plaintiff,              Case No. 2:09-cv-218

v.                                     Honorable Robert Holmes Bell

JERI-ANN SHERRY, et al.,

        Defendants.

_____/

## **OPINION**

Plaintiff currently is incarcerated at the Bellamy Creek Correctional Facility (IBC). Some of the events underlying the complaint took place at IBC, but others occurred at the Kinross Correctional Facility (KCF) and the Chippewa Correctional Facility (URF). Plaintiff sues the following URF employees Warden Jeri-Ann Sherry, Deputy Warden T. Mackie and Facility Inspector Ian MacDonald.

In his complaint, Plaintiff alleges that while he was confined at IBC, he was being threatened by members of the Insane Spanish Cobra Nation's gang, because he would not kill someone for them. Plaintiff was subsequently transferred to KCF, and then to URF. Plaintiff alleges that he continued to receive threats from the Cobras and informed Defendants of the threats, but did not receive any help.[1] Plaintiff alleges that after he had informed Defendants of the threats, prisoners affiliated with the Cobras cut the back of his neck while he was in the chow hall. Plaintiff asserts that

---

[1] Plaintiff also claims that he was harassed by officers, but he does not sue the officers.

he continued to receive threats of physical harm and demands for money from other prisoners. Plaintiff reported the threats to Defendants, who failed to give him protective segregation.

Plaintiff claims that defendants' actions violated his rights under the First and Eighth Amendments to the United States Constitution. Plaintiff is seeking compensatory and punitive damages.

Presently before the Court is the Defendants' Motion for Summary Judgment, pursuant to Fed. R. Civ. P. 56. Plaintiff has filed a response and the matter is ready for decision. Summary judgment is appropriate only if the moving party establishes that there is no genuine issue of material fact for trial and that he is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). If the movant carries the burden of showing there is an absence of evidence to support a claim or defense, then the party opposing the motion must demonstrate by affidavits, depositions, answers to interrogatories, and admissions on file, that there is a genuine issue of material fact for trial. *Id.* at 324-25. The nonmoving party cannot rest on its pleadings but must present "specific facts showing that there is a genuine issue for trial." *Id.* at 324 (quoting Fed. R. Civ. P. 56(e)). The evidence must be viewed in the light most favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986). Thus, any direct evidence offered by the plaintiff in response to a summary judgment motion must be accepted as true. *Muhammad v. Close*, 379 F.3d 413, 416 (6th Cir. 2004) (*citing Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994)). However, a mere scintilla of evidence in support of the nonmovant's position will be insufficient. *Anderson*, 477 U.S. at 251-52. Ultimately, the court must determine whether there is sufficient "evidence on which the jury could reasonably find for the plaintiff." *Id.* at 252. *See also Leahy v. Trans Jones, Inc.*, 996 F.2d 136, 139 (6th Cir. 1993) (single affidavit, in presence of other evidence to the contrary, failed to present genuine issue of fact); *cf. Moore, Owen, Thomas & Co. v.*

*Coffey*, 992 F.2d 1439, 1448 (6th Cir. 1993) (single affidavit concerning state of mind created factual issue).

As noted above, Plaintiff claims that Defendants failed to protect him from harm in violation of the Eighth Amendment. Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). To establish a violation of this right, Plaintiff must show that Defendant was deliberately indifferent to the Plaintiff's risk of injury. *Walker v. Norris*, 917 F.2d 1449, 1453 (6th Cir.1990); *McGhee v. Foltz*, 852 F.2d 876, 880-881 (6th Cir.1988). While a prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim, he must at least establish that he reasonably fears such an attack. *Thompson v. County of Medina, Ohio*, 29 F.3d 238, 242-43 (6th Cir.1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety.")

In support of their motion for summary judgment, Defendant Sherry attests that Plaintiff was transferred to URF from KCF on March 12, 2007, after assaulting a prisoner with an edged weapon that left a crescent shaped cut on the prisoner's back that required stitches. On October 30, 2007, Defendant McDonald received a request for protective custody from Plaintiff. Because URF does not have a protective custody unit, inmates with a need for such custody are transferred to another facility. In Defendant Sherry's experience, some inmates request protective custody in order to obtain a transfer. Plaintiff's request was investigated by Defendant McDonald. (Defendants' Exhibit A, ¶¶ 4-7.)

In his request, Plaintiff asserted that while he was incarcerated at IBC, he provided information which resulted in prisoner Jesus Garcia #216878 being sent to Level V as a Security Threat Group (STG) leader. Plaintiff believed that inmate Jordan #246127, who "walked the yard" with Garcia, was going to hurt him in response to Plaintiff's conduct. (Defendants' Exhibit A-1, p. 1.) In the course of investigating this claim, Defendant McDonald contacted the Inspector at IBC on November 2, 2007, who stated that Plaintiff had provided some information which resulted in a "shank" being found, as well as some information that Garcia was running some type of scam out of the law library at IBC. The Inspector stated that the information provided by Plaintiff was nothing new and was not used to transfer prisoner Garcia, or to reclassify him. Defendant McDonald investigated prisoner Jordan and discovered that he was never at Level IV at IBC, so that there was no physical way that he could have "walked the yard" with Garcia. Moreover, Defendant McDonald noted that prisoner Garcia would not have contracted a "hit" with prisoner Jordan, because prisoner Jordan had a past affiliation with the Cash Flow Posse, a rival gang to the Insane Spanish Cobras. Defendant McDonald concluded that Plaintiff did not require protection from prisoner Jordan or any other prisoner on level IV at URF. Defendant McDonald further noted that this was a second attempt by Plaintiff to gain a transfer from URF and that the first attempt occurred on August 19, 2007, after he received a letter from his brother, Jeff Cadarette #250282, outlining what to do in order to obtain a transfer. (Defendants' Exhibit A-1, pp. 1-2, Exhibit B, ¶¶ 11-18.)

Defendants also state that a review of the History of Cell Usage shows that prisoner Jordan was not in the same housing unit at IBC as Plaintiff and prisoner Garcia. A copy of the History of Cell Usage printouts for each of these individuals is attached to Defendants' brief as Exhibit A-1, pp. 3-5. According to the printouts, as well as to the November 6, 2007, Memorandum from Defendant McDonald to URF Deputy Warden John Boynton, prisoner Jordan #246127 arrived

at IBC on August 4, 2006, as a level II prisoner and locked in cell 3-205B until April 16, 2007, when he was placed in segregation for assault and battery on a prisoner. Plaintiff arrived at IBC on April 24, 2006, as a level IV prisoner and locked in cell 4-258B until August 20, 2006, when he was placed in segregation for his protection. Finally, prisoner Garcia #216878 arrived at IBC on January 27, 2006, as a level IV prisoner and locked in cell 4-145T until August 25, 2006, when he was placed in segregation for a Notice of Intent to Classify to Administrative Segregation as a leader and an STG II prisoner. (Defendants' Exhibit A-1, pp. 2-5.) Defendants also attach a copy of MDOC Policy Directive 05.01.140 ¶ KK, which prohibits male prisoners from having contact with prisoners of a different security level, except in the context of academic, career, and technical programming, receiving health care services, participating in the Warden's Forum, Prisoner Benefit Fund or Store Committee, or in giving or receiving legal assistance. (Defendants' Exhibit A-2.)

On November 13, 2007, Defendant McDonald interviewed Plaintiff, who claimed that there were inmates in URF's Round Unit who were threatening him because he had provided information about an inmate while at IBC. However, Plaintiff was unable to provide Defendant McDonald with the names or nicknames of any of the inmates who were threatening him. Defendant McDonald attests that nothing in his investigation supported Plaintiff's claims that he was being threatened. (Defendants' Exhibit B, ¶¶ 19-23.) On November 9, 2007, Defendant Sherry concluded that Plaintiff's request for protective custody was properly denied. (Defendants' Exhibit A, ¶ 18, Exhibit A-3.)

On November 14, 2007, Plaintiff reported that he had been assaulted on his way to the evening meal. Plaintiff's first statement indicated that he had been assaulted in the Round Unit small yard, but a review of the digital camera footage showed that no assault took place in that location. Plaintiff then stated that the assault occurred in the entrance to Round Unit, but Defendant

McDonald's review of the digital camera footage showed that no assault took place in that location. In fact, a review of the video footage showed that Plaintiff exited the front doors of Round Unit alone and returned to the housing unit 1 second later to report that he had been assaulted. (Defendants' Exhibit B, ¶¶ 24-26.)

Defendant McDonald attests that the Round Unit video for November 14, 2007, reveals that at 18:56:38, Plaintiff exited cell R-315/316 and walked up the C-wing hallway. Plaintiff walked from left to right in the camera viewer and could be seen wearing a blue baseball style cap, with his coat collar completely up around his neck and his zipper completely drawn up. At 18:56:59, Plaintiff appeared on camera walking toward the Round Unit main doors, staying close to the wall. At this time, Assistant Resident Unit Supervisor McKee was in his office. At 18:57:06, Plaintiff exited the Round Unit main doors alone, and at 18:57:07, Plaintiff turned around in the main door, without actually exiting the building, and returned to the unit alone. Plaintiff could be seen wearing his hat, with his coat collar still covering his neck area. (Defendants' Exhibit B, ¶ 27.)

On December 21, 2007, Plaintiff accused several inmates of threatening him. Defendant McDonald's investigation into these allegations demonstrated that Plaintiff's allegations were unfounded. Consequently, Defendant McDonald issued a major misconduct on Plaintiff for Interference with the Administration of Rules. (Defendants' Exhibit B, ¶ 28.)

In response to Defendants' assertion that prisoner Jordan could not have walked the yard with prisoner Garcia, Plaintiff offers a December 3, 2007, memorandum from Defendant McDonald to Plaintiff, in which he states:

> You are not being targeted by staff as you allege. In Round Unit you claimed that you were in danger from prisoner Jordan 246127, because according to you, he hung out with Garcia 216878 a.k.a. King Chui the leader of the Insane Spanish Cobra's [sic] in Detroit. An investigation into that allegation resulted in Jordan 246127 going to church with

> Garcia 216878 at [IBC]. Jordan 246127 is no threat to you, he was the unfortunate prisoner who locked in the same wing as you at [IBC] and provided a convenient name for you to use when he transferred in.

(Plaintiff's Exhibit 13.)

Plaintiff asserts that this shows that Defendant McDonald knew that prisoner Jordan could have had contact with prisoner Garcia, and could have been a danger to Plaintiff. However, in the same memorandum offered by Plaintiff, Defendant McDonald also states:

> You were not assaulted by any prisoner in Round Unit, your injury was self inflicted. I investigated that allegation as well. I can track your movement from the time you left your cell on the night in question until you reported your alleged assault to staff. As no assault occurred this incident does not relate to anything at [IBC].

(Plaintiff's Exhibit 13.)

Plaintiff further states that the only way he could have inflicted the wound on himself, given the video evidence, was if he had done so in his cell prior to leaving the unit. However, Plaintiff states that officers searched his cell after the incident and found no evidence of blood. Plaintiff states that he was covered in blood from his injury, and that some would necessarily have been present in his cell if he had self-inflicted the wound, especially in light of the fact that he suffered from a clotting disorder. Plaintiff therefore states that his claim that a group of prisoners surrounded him while he was exiting Round Unit, and that one of the prisoners slashed him in the neck is the more likely scenario. However, Plaintiff fails to address the fact that the video evidence showed that he was alone at the time he exited and re-entered Round Unit. Finally, Plaintiff asserts that beginning in 2008, he has been placed in protective segregation on multiple occasions in other facilities because of threats by prisoners with ties to the Cobras. However, the court notes that incidents which occurred in 2008 and 2009 have no bearing on whether Defendants were deliberately indifferent to a threat on Plaintiff in 2007.

A review of the record in this case shows that Plaintiff's claim that Defendants acted with deliberate indifference is unsupported by the evidence. The materials offered by Defendants with regard to the investigation of Plaintiff's request for protection, show that his claims were carefully investigated and found to lack merit. In addition, following Plaintiff's injury, review of videotape filmed during the pertinent time period showed that Plaintiff was alone during the time of the alleged attack, and that he was not out of video camera range long enough for such an attack to have occurred. Such evidence appears to support Defendants' assertion that Plaintiff inflicted an injury on himself in an effort to be transferred to another facility. Based on the evidence presented by the parties, the court concludes that Defendants were not deliberately indifferent to a substantial risk of serious harm to Plaintiff.

Plaintiff also asserts that Defendant McDonald retaliated against him when he issued a false misconduct ticket on Plaintiff for Interference with the Administration of Rules. Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Thaddeus-X*, 175 F.3d at 394. Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

In the December 21, 2007, misconduct report, which is attached as an Exhibit to Plaintiff's complaint, Defendant McDonald stated:

> From October 30, 2007 through December 21, 2007 Cadarette 495785 has been alleging that he has been threatened by other prisoners, assaulted and threatened again by other prisoners. Investigations into all Cadarette's allegations have resulted in them being unfounded. On 12/21/07 Cadarette again accused several prisoners of threatening him. An investigation into these allegations resulted in these allegations being unfounded as well. Cadarette has made false allegations against staff and prisoners in an attempt to mislead the disciplinary process for both staff and prisoners.

(Attachment to docket #1, misconduct ticket by Defendant McDonald.)

Plaintiff received a hearing on the ticket, and was found guilty by Hearing Officer Theut. In the reasons for finding, Hearing Officer Theut noted that there was no video of the incident, and that based on the statements of Defendant McDonald and two confidential witnesses, Plaintiff was guilty of misleading the disciplinary process by making false claims of assault and threats. (Attachment to docket #1, misconduct hearing report.) Plaintiff requested a rehearing, which was denied by Hearings Administrator Richard Stapleton on February 26, 2008.

Defendants state that they are entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff failed to allege that he was engaged in any protected conduct. However, Plaintiff claims that he was retaliated against because he filed a grievance on Defendants McDonald and Sherry after his November 14, 2007, assault. The filing of a prison grievance is constitutionally protected conduct for which a prisoner cannot be retaliated against. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Hall v. Nusholtz*, No. 99-2442, 2000 WL 1679458, at *2 (6th Cir. Nov. 1, 2000); *Burton v. Rowley*, No. 00-1144, 2000 WL 1679463, at *2 (6th Cir. Nov. 1, 2000).

However, the court concludes that Plaintiff has failed to sufficiently support his claim that the alleged misconduct was actually motivated by the filing of grievances. Temporal proximity may be "'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.'" *Muhammad v. Close*, 379 F.3d 413, 417-18 (6th Cir. 2004) (quoting

*DiCarlo v. Potter*, 358 F.3d 408, 422 (6th Cir. 2004)). However, "[c]onclusory allegations of temporal proximity are not sufficient to show a retaliatory motive." *Skinner v. Bolden*, 89 F. App'x 579, 580 (6th Cir. 2004).

Moreover, *Muhammad* does not stand for the proposition that temporal proximity alone is sufficient to create an issue of fact as to retaliatory motive.

> In *Muhammad* the Sixth Circuit did not resolve the issue, but merely observed that "temporal proximity alone **may be** 'significant enough to constitute indirect evidence of a causal connection so as to create an inference of retaliatory motive.' " Id. at 418 (quoting DiCarlo v. Potter, 358 F.3d 408, 422 (6th Cir.2004) (emphasis added). Even if temporal proximity may in some cases create an issue of fact as to retaliatory motive, it would only be sufficient if the evidence was "significant enough." Plaintiff's conclusory and ambiguous evidence is not "significant enough" to create an issue of fact as to retaliatory motive.

*Brandon v. Bergh*, 2010 WL 188731, slip op. at 1 (W.D. Mich., Jan. 16, 2010).

It is well recognized that "retaliation" is easy to allege and that it can seldom be demonstrated by direct evidence. *See Harbin-Bey v. Rutter*, 420 F.3d 571, 580 (6th Cir. 2005); *Murphy v. Lane*, 833 F.2d 106, 108 (7th Cir. 1987); *Vega v. DeRobertis*, 598 F. Supp. 501, 506 (C.D. Ill. 1984), *aff'd*, 774 F.2d 1167 (7th Cir. 1985). "[A]lleging merely the ultimate fact of retaliation is insufficient." *Murphy*, 833 F.2d at 108. "[C]onclusory allegations of retaliatory motive 'unsupported by material facts will not be sufficient to state . . . a claim under § 1983.'" *Harbin-Bey*, 420 F.3d at 580 (quoting *Gutierrez v. Lynch*, 826 F.2d 1534, 1538-39 (6th Cir. 1987)); *see also Skinner v. Bolden*, 89 F. App'x 579, 579-80 (6th Cir. 2004) (without more, conclusory allegations of temporal proximity are not sufficient to show a retaliatory motive); *Birdo v. Lewis*, No. 95-5693, 1996 WL 132148, at *1 (6th Cir. Mar. 21, 1996); *Fields v. Powell*, No. 94-1674, 1995 WL 35628, at *2 (6th Cir. Jan. 30, 1995); *Williams v. Bates*, No. 93-2045, 1994 WL 677670, at *3 (6th Cir. Dec. 2, 1994). Plaintiff

merely alleges the ultimate fact of retaliation in this action. He has not presented any facts to support his conclusion that Defendant McDonald retaliated against him because of his grievances.

Moreover, as noted above, Plaintiff was found guilty of the misconduct following a hearing by Hearing Officer Theut, who is not a party to this action. In addition, Plaintiff's subsequent request for rehearing was denied by Hearings Administrator Richard Stapleton. A finding of guilt based upon some evidence of a violation of prison rules "essentially checkmates [a] retaliation claim." *Clemons v. Cook*, 52 Fed. Appx. 762, 763 (6th Cir. Dec. 11, 2002), *citing See Henderson v. Baird,* 29 F.3d 464, 469 (8th Cir.1994). Therefore, Defendant McDonald is entitled to summary judgment on Plaintiff's retaliation claim.

Defendants alternatively move for qualified immunity. Government officials, performing discretionary functions, generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Dietrich v. Burrows*, 167 F.3d 1007, 1012 (6th Cir. 1999); *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997); *Noble v. Schmitt*, 87 F.3d 157, 160 (6th Cir. 1996); *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). An "objective reasonableness" test is used to determine whether the official could reasonably have believed his conduct was lawful. *Dietrich*, 167 F.3d at 1012; *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). "Qualified immunity balances two important interests-the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 129 S. Ct. 808, 815 (2009).

In making a qualified immunity determination the court must decide whether the facts as alleged or shown make out a constitutional violation or whether the right that was allegedly violated was a clearly established right at the time of the alleged misconduct. *Id.* at 816. If the court

can conclude that either no constitutional violation occurred or that the right was not clearly established, qualified immunity is warranted. The court may consider either approach without regard to sequence. *Id*. As previously discussed, because plaintiff cannot establish that his constitutional rights were violated, defendants are entitled to qualified immunity.

In light of the foregoing, the court concludes that Plaintiff has failed to sustain his burden of proof in response to Defendants' motion for summary judgment. Accordingly, Defendants' Motion for Summary Judgment (Docket #18) will be granted and that this case be dismissed in its entirety.

A Judgment consistent with this Opinion will be entered.

Dated: February 14, 2011                 /s/ Robert Holmes Bell
                                         ROBERT HOLMES BELL
                                         UNITED STATES DISTRICT JUDGE